UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE R. OBO I.S., § | |
| § | |
| Plaintiff, § | Case # 1:19-cv-1037-DB |
| § | |
| v. § | MEMORANDUM DECISION |
| § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

## INTRODUCTION

Plaintiff Stephanie R. ("Plaintiff") brings this action on behalf of I.S., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying I.S.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order. *See* ECF No. 15. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 13. Plaintiff also filed a reply. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion (ECF No. 11) is **DENIED**, and the Commissioner's motion (ECF No. 13) is **GRANTED**.

## BACKGROUND

On February 22, 2016, Plaintiff protectively filed an application for SSI child's benefits on behalf of her daughter, I.S., alleging disability beginning February 18, 2016, due to attention deficit hyperactivity disorder ("ADHD"). Transcript ("Tr.") 40, 165-70, 181. The application was initially denied May 18, 2016, after which Plaintiff timely requested a hearing. Tr. 40, 120-24.

On May 17, 2018, Administrative Law Judge Patricia M. French (the "ALJ") presided over a video hearing from Lawrence, Massachusetts. Tr. 40, 63-98. Plaintiff and I.S. appeared in

Buffalo, New York. Plaintiff appeared and testified without the assistance of an attorney or other representative.[1] Tr. 40. On August 31, 2018, the ALJ issued an unfavorable decision, finding I.S. not disabled. Tr. 40-54. On June 17, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's August 31, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

---

[1] The record reflects that Plaintiff chose to proceed with the hearing without representation even after the ALJ explained Plaintiff's right to representation and offered a one-time postponement of the hearing so Plaintiff could obtain representation. Tr. 69-71.

1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or

complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 31, 2018 decision:

1. The claimant was born on November 26, 2007. Therefore, she was a school-age child on February 22, 2016, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2));

2. The claimant has not engaged in substantial gainful activity since February 22, 2016, the application date (20 CFR 416.924(b) and 416.971 *et seq*.);

3. The claimant has the following severe impairments: an attention deficit hyperactivity disorder and a specific learning disability in math (20 CFR 416.924(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926);

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a);

6. The claimant has not been disabled, as defined in the Social Security Act, since February 22, 2016, the date the application was filed (20 CFR 416.924(a)).

Tr. 40-54.

Accordingly, the ALJ determined that, for the application for SSI, protectively filed on February 22, 2016, I.S. is not disabled under section 1614(a)(3)(C) of the Act. Tr. 54.

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff argues that: (1) the ALJ failed to adhere to her heightened duty to develop the record with missing mental health and education records; and (2) the Appeals Council ignored new and material evidence that was submitted for its review. *See* ECF No. 11-1 at 1, 9-18.

4

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

In this case, Plaintiff disagrees with the ALJ's decision but does not argue in which domain(s) I.S. should have been found more limited. *See* ECF No. 11-1 at 9-18. Rather, Plaintiff makes technical arguments that the ALJ failed to develop the record, and the Appeals Council did not properly evaluate evidence submitted for its review. *See id*. Plaintiff's arguments are unpersuasive. Upon review of the record and the ALJ's decision, the Court finds that the ALJ's conclusion that I.S. did not have two marked limitations or one extreme limitation in the six domains described above was supported by substantial evidence.

An IEP (Individualized Education Program) for the 2015-2016 school year (second grade) and the 2016-2017 school year (third grade) showed that I.S. received integrated co-teaching services for English/Language Arts ("ELA") Class and Math Class. Tr. 284. I.S. had been referred in December 2013 for testing due to concerns regarding her academic progress in first grade. Tr. 293. Despite receiving three months of special education interventions, I.S. continued to demonstrate below grade performance. Tr. 287, 293. In terms of academic progress, her reading was rated at the "strategic level for grade 2." Tr. 286. She had difficulty focusing and had trouble staying engaged without prompting and redirecting. *Id*. In writing, she could write sentences with guidance but, at times, would get stuck on a word and lose focus. *Id*. She showed slow progress in math and had difficulty producing quality work independently due to her off-task behaviors. *Id*.

I.S. enjoyed school and socializing with her classmates. Weschler Preschool and Primary Scale of Intelligence-Third Edition ("WPPSl-III") intelligence testing was administered, which indicated "low average" cognitive abilities and a full-scale intelligence score of 82. Tr. 293. However, I.S. was noted to have quick processing speed; she could perform simple tasks quickly and efficiently. *Id*. The report ultimately concluded that I.S. had many characteristics of a learning disability and would need additional support to focus on her academic deficits. *Id*.

On January 5, 2016, I.S. saw Carol Northrup, PNP ("Ms. Northrup"), at Delaware Pediatric Associates, for a routine examination. Tr. 302-04. I.S. was in second grade and had repeated the first grade. Tr. 302. Plaintiff reported I.S. had attention issues and difficulty sleeping. Tr. 302-03. Ms. Northrup noted that I.S. communicated normally and was "very chatty." Tr. 303. Plaintiff was advised to get "Vanderbilt forms"[2] completed and to monitor I.S.'s behavior. Tr. 304. When Plaintiff and I.S. returned on February 18, 2016, the alleged onset date, Plaintiff reported that I.S. had a poor ability to concentrate, was easily distracted, blurted out answers to questions before they had been completed, and had difficulty waiting her turn. Tr. 305. However, I.S. did get along with peers most of the time. *Id*. I.S. was diagnosed with ADHD, predominantly hyperactive type, and was prescribed ADHD medication. Tr. 306.

At a follow-up with Ms. Northrup on March 8, 2016, Plaintiff reported I.S. took her medication as prescribed, and her school performance had improved with medication. Tr. 308. I.S. received a refill of her ADHD medication with no changes in dosage. Tr. 309.

On April 15, 2016, I.S.'s general education teacher Allison Boldt (Ms. Boldt") completed a teacher questionnaire. Tr. 204-11. At the time, I.S. was in the second grade. Tr. 204. Ms. Boldt

---

[2] According to WebMD, the Vanderbilt Assessment Scale is a 55-question assessment tool that reviews symptoms of ADHD. It also looks for other conditions such as conduct disorder, oppositional-defiant disorder, anxiety, and depression. WebMd, June 7, 2019, https://www.webmd.com/add-adhd/qa/what-is-the-vanderbilt-assessment-scale2007 (last visited December 21, 2020).

stated that I.S.'s reading, math, and written language levels were "intensive" (Tr. 204), and she opined that I.S. had obvious problems in acquiring and using information, including reading and comprehending written material; providing organized oral explanations and adequate descriptions; and expressing ideas of written form (Tr. 205). In all other areas, Ms. Boldt indicated that I.S. had no more than a slight problem. Tr. 205. She explained that I.S. often received extra help in a small group setting; I.S. refused to participate when she was frustrated, and her behaviors included lying on the floor. *Id*. In attending and completing tasks, I.S. had no more than a slight problem in all areas of functioning. Tr. 206. Ms. Bolt explained that I.S. got off task easily, created distractions, and lost focus when she created distractions. *Id*.

With interacting and relating with others, Ms. Boldt opined that I.S. had obvious problems with expressing anger appropriately; following rules (classroom, games, sports); and respecting/obeying adults in authority. Tr. 207. I.S. had no more than a slight problem in all other areas of functioning. *Id*. Behavior modification strategies were necessary, including "school color chart" and seating change. *Id*. I.S. called classmates names and said things that created "social problems." *Id*. In terms of caring for self, Ms. Boldt opined I.S. had obvious problems with handling frustration appropriately; being patient when necessary; identifying and appropriately asserting emotional needs; responding appropriately to changes to own mood (e.g. calming self); using appropriate coping skills to meet daily demands of school environment; and knowing when to ask for help. Tr. 209. However, I.S. had no more than a slight problem in the other areas of functioning. *Id*. Ms. Boldt noted that I.S. would lay on the floor or hide under her desk when she was upset; she also sat on her chair when it was tipped back and rocked the chair. *Id*. Ms. Boldt added that I.S. was much more focused, calm, and attentive to tasks when she was on her medication. Tr. 210. When I.S.'s medication wore off around noon, however, she would refuse to

work. *Id*. Ms. Boldt stated that I.S. benefited from her medication as it calmed her body and focused her mind. *Id*.

On May 13, 2016, I.S. attended a consultative psychiatric evaluation with Christine Ransom, Ph.D. ("Dr. Ransom"), accompanied by Plaintiff. Tr. 313-16. Plaintiff reported that I.S. was in the second grade and received special education for ADHD. Tr. 313. I.S. had started on medication for ADHD two months prior and was doing well at school since being on medication. Tr. 313. Her grades had improved, and she was able to focus, stay still, and be compliant with all rules and regulations. *Id*. Plaintiff reported that she believed I.S. was appropriately medicated and denied problems with attention, concentration, and hyperactivity. *Id*.

Upon examination, I.S. was cooperative and socially appropriate. Tr. 314. She appeared her stated age, and her motor behavior was normal. *Id*. Her eye contact was appropriate; her speech and language skills were in the average range; and her attention and concentration were intact, as she could count backwards from 20 and do simple calculations. *Id*. She showed appropriate attention through the exam, and her recent and remote memory were intact. *Id*. Her intellectual functioning was average, and her insight and judgment were adequate. Tr. 315.

Dr. Ransom diagnosed ADHD, in remission on medication. Tr. 315. She indicated that I.S. showed no evidence of difficulty attending to, following, and understanding age-appropriate directions; completing age-appropriate tasks, adequately maintaining appropriate social behavior; responding appropriately to changes in the environment; learning in accordance with cognitive functioning; asking questions and requesting assistance in an age-appropriate manner; being aware of danger and taking needed precautions; and interacting adequately with peers and adults. *Id*.

On May 17, 2016, state agency psychological consultant O. Austin-Small, Ph.D. ("Dr. Austin-Small"), reviewed I.S.'s file. Tr. 115-16. He noted that I.S. had an IEP due to a learning

8

disability, and she received integrated co-teaching services in ELA and Math classes. Tr. 115. He also noted that both Plaintiff and her teachers reported that medication helped with I.S.'s ADHD. Tr. 115. He opined that I.S.'s ADHD would cause "less than marked" limitations in acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for self, with no limitation moving about and manipulating objects or in health and physical well-being. Tr. 115-16.

On August 23, 2017, I.S. attended a well visit at Elmwood Health Center ("Elmwood"). Tr. 318-20. Plaintiff reported that I.S.'s school performance had been good, and she had no concerns other than wanting to restart her ADHD medication. Tr. 318. She stated that I.S.'s grades in the past year were "very good." *Id*. However, I.S. was staying up late and not going to bed. *Id*. She got bored in bed and would get up to play video games or watch television. *Id*. I.S. did not like to play outside but enjoyed video games. *Id*. Plaintiff said that, while I.S.'s grades in school were very good, if she did not take her medication it would be noticeable at school, and Plaintiff would receive a call from the school. *Id*. Plaintiff said she noticed a difference in how much I.S. talked when she took her medication versus off the medication. *Id*. I.S. had not taken any medication over the summer but needed to resume taking it, since she started school in the fall. *Id*. Methylphenidate was restarted. Tr. 320.

On November 9, 2017, I.S. presented to Elmwood for a recheck of her ADHD medication. Tr. 321-22. Plaintiff reported I.S.'s symptoms included short attention span, hyperactive behavior, easy distractibility, losing things, fidgeting, and excessive talking. Tr. 321. Plaintiff wanted to discuss increasing I.S.'s medication. *Id*. I.S.'s methylphenidate dose was doubled. Tr. 322.

At her next medication check at Elmwood on January 31, 2018, Plaintiff reported that I.S.'s medication was working. Tr. 325. Plaintiff noted improvement in I.S.'s behavior on the increased

9

dose, but she said there were still days when I.S. had poor behavior at school and Plaintiff would find her pill left on the kitchen counter. *Id*. Plaintiff also reported that I.S. had trouble getting to sleep and would get up and eat a snack or turn on the television. *Id*. She only took her medication on school days and did not take it on weekends or vacation. *Id*. I.S.'s treatment provider recommended that the school nurse give both doses of medication. Tr. 326. I.S. was started on melatonin for her sleep difficulties, and her provider discussed sleep hygiene and establishing a sleep routine. *Id*.

On May 15, 2018, A treatment provider at Monsignor Carr Children's Clinic wrote a letter indicating that I.S. was engaged in treatment there and reported that I.S. and her family actively engaged and participated during sessions. Tr. 333.

An amended IEP dated May 15, 2018 indicated that I.S. continued to receive co-teaching for ELA and Math. Tr. 257. Her ELA average was 80% with minimal assistance. Her Math average was 64% with supports in place. Tr. 259. I.S. needed to work in a small group, use repetition, do fluency practice at home, and have a privacy space to help her be successful in math. *Id*. I.S. had "extreme relationships with peers." *Id*. Weekly counseling in or outside the school was recommended to allow I.S. "to vent her friendship concerns." Tr. 259-60. I.S.'s intellectual skills fell in the below average range. Tr. 260. She needed very explicit instructions, extra practice, and step-by-step modeling to learn and retain new information. *Id*. The report concluded that I.S. had learning difficulties that would impact her ability to acquire, retain, and apply higher level thinking skills to complete complex reading and math tasks at the fourth-grade level. *Id*. I.S. received several accommodations including: having directions read. repeated and clarified; having testing administered in a small group; and extended time for testing. Tr. 263.

I.S. received a language evaluation on June 14, 2018. Tr. 344. Standardized testing revealed that I.S. had mild/moderate receptive and expressive language delay. Tr. 347. Her areas of strength included her ability to recall sentences of increasing length and complexity and her ability to formulate grammatically acceptable sentences. *Id*. Her area of weakness was her ability to follow direction of increasing length and complexity. *Id*. She qualified for speech language therapy. *Id*.

An IEP for the 2018-2019 school year (fourth grade), dated June 26, 2018, added speech/language therapy in a small group setting to I.S.'s special education services. Tr. 269, 274. She was on grade level in spelling and continued to have problems in math. Tr. 270. As for social development, she continued to have extreme relationships with her peers and attended "restorative justice circles" to discuss issues. Tr. 275. She could be very controlling and bossy with peers but was learning how to make and keep friends. *Id*.

On June 9, 2019, I.S. attended a psychiatric evaluation with consultative examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano"). Tr. 334-38. I.S. was ten years old. Tr. 334. Plaintiff reported that I.S.'s performance in school was "not good" and explained that I.S. received special education for a learning disability for the past two years, and I.S. had repeated first grade. *Id*. Two months prior to the visit, I.S. had started seeing a counselor two times a week. *Id*. She had difficulty sleeping, was a picky eater, and fought with her siblings. *Id*. Plaintiff reported that I.S. was "very hyperactive" and did not want to do homework. Tr. 334. She had difficulty following through on instructions, talked excessively, and was easily distracted. Tr. 335. At the time of the visit, I.S. was not receiving any medical treatment or medications. *Id*.

Upon examination, I.S. was cooperative and her manner of relating, social skills, and overall presentation were age appropriate. Tr. 335. She appeared her stated age and was dressed casually and well-groomed. *Id*. Her motor behavior was normal, and her eye contact was

appropriate. *Id*. Her speech was fluent, her expressive and receptive languages were adequate, and her thought processes were coherent and goal directed. Tr. 335-36. Her affect was of full range, and her mood was "happy." Tr. 336. Her attention and concentration were impaired due to distractibility, but her recent and remote memory skills were intact. *Id*.

Dr. Fabiano was going to administer WISC-V testing (Wechsler Intelligence Scale for Children Fifth Edition), but I.S. recognized the material, stating: "I did this before at school." Tr. 340. Instead, Dr. Fabiano administered the TONI-4, a standardized nonverbal intelligence evaluation. *Id*. I.S. was relaxed and comfortable during the testing; she recalled and understood instructions; and she worked with reflection and deliberation. *Id*. Testing indicated that I.S.'s nonverbal intelligence appeared to be in the low average range, and Dr. Fabiano opined that she had some adaptive limitations in academics and some aspects of home living and self-care. *Id*.

Dr. Fabiano diagnosed unspecified ADHD and unspecified disruptive behavior disorder. Tr. 337. He opined that the results of the examination appeared to be consistent with psychiatric problems, but in itself, this did not appear to be significant enough to interfere with I.S.'s ability to function on a daily basis. *Id*. Dr. Fabiano further opined that I.S. had moderate limitations in her ability to attend to, follow, and understand age-appropriate directions and to sustain concentration and complete age-appropriate tasks. *Id*. She had mild to moderate limitations in her ability to maintain appropriate social behavior and mild limitations in her ability to interact appropriately with peers. Tr. 337, 341. Dr. Fabiano indicated that teacher ratings on ADHD symptoms and impairment would be required for a more precise diagnosis. Tr. 337. He also indicated that Plaintiff would benefit from parent effectiveness training to help her manage I.S.'s behavior in the home setting. *Id*.

Plaintiff submitted an Individualized Action Plan dated and signed March 27, 2019 to the Appeals Council. Tr. 8-13. The plan indicated that I.S. began receiving treatment on May 30, 2018 and outlined her treatment goals. *Id*. I.S.'s ADHD medication was continued, and another medication was added to target inattention and hyperactivity. Tr. 10, 26. Progress notes indicated that I.S. attended twice monthly counseling sessions with various treatment providers in 2018 and 2019. Tr. 30-31.

As noted above, Plaintiff does not directly challenge the ALJ's analysis of the six domains, but rather, makes technical arguments that the ALJ failed to develop the record and the Appeals Council did not properly evaluate evidence submitted for its review. *See* ECF No. 11-1 at 9-18.

With respect to the ALJ's analysis of the six domains, the Court finds that the ALJ properly evaluated I.S.'s limitations in all six domains, and her conclusion that I.S. did not have two marked limitations or one extreme limitation in the six domains was supported by substantial evidence, including the opinions of state agency psychological consultant Dr. Austin-Small, consultative examiners Dr. Ransom and Dr. Fabiano, and I.S.'s teacher, Ms. Boldt. Tr. 44-54, 115-16, 204-11, 313-16, 334-38. These opinions were further supported by treatment records and Plaintiff's own testimony, which indicated I.S.'s ADHD was well-controlled when she took her medication. Tr. 78, 210, 308-09, 318. In fact, Ms. Boldt observed that I.S. was much more focused, calm, and attentive to tasks on medication, and she stated that I.S. benefited from her medication as it calmed her body and focused her mind. Tr. 210. Improvement with treatment is a proper factor for the ALJ to consider in determining disability. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished).

Furthermore, it is the ALJ's responsibility to weigh all evidence and resolve conflicts in the evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Aponte v. Sec'y of HHS*, 728 F.2d

13

588, 591 (2d Cir. 1984); *see also Bethge v. Chater*, 896 F. Supp. 301, 317 (W.D.N.Y. 1995). While Plaintiff may disagree with the ALJ's conclusions, her mere disagreement with the ALJ's findings does not warrant remand. Even if the evidence demonstrated some limitation one of the domains, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d). The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). As noted above, there is such evidence here.

With respect to Plaintiff's argument that the ALJ failed to adequately develop the record, Plaintiff appears to downplay the ALJ's efforts to obtain records while emphasizing Plaintiff's *pro se* status. *See* ECF No. 11-1 at 10-15. However, the ALJ not only acknowledged Plaintiff's *pro se* status at the hearing, she also explained in some length Plaintiff's right to have representation. Tr. 70-71. The ALJ offered a one-time postponement of the hearing to allow Plaintiff to obtain representation; Plaintiff stated she wanted to proceed with the hearing. Tr. 71. The ALJ gave Plaintiff three documents: a document acknowledged Plaintiff's right to representation; a document indicating that Plaintiff waived her rights to representation; and a form that would allow the ALJ to obtain medical and other information related to I.S. *Id.*

In addition, the ALJ told Plaintiff that she was going to make sure she obtained all the records and sent I.S. for an additional examination. Tr. 94. The ALJ made sure that Plaintiff wrote down her name and number and told Plaintiff she could call the office and ask to speak with the ALJ's case technician. Tr. 96. The ALJ then proceeded to get additional information needed to request school and medical records. Tr. 96-97. Subsequent to the hearing, the ALJ obtained additional evidence, including educational and medical records, which the ALJ sent to Plaintiff for

review. Tr. 281. On July 25, 2018, Plaintiff called and stated she had reviewed the proposed exhibits; she had no objection to the inclusion of the proposed exhibits; and she wished the record closed. Tr. 283.

Plaintiff suggests that the ALJ should have re-contacted these sources or issued subpoenas to get the records but does not cite to any evidence or authority that would suggest the ALJ erred in this context. Plaintiff's attempts to point to the absence of educational and medical records as a reason the ALJ erred are without merit, as the record reflects that the ALJ fully developed the record by obtaining additional records and a second consultative examination. Accordingly, substantial evidence supports the ALJ's conclusions. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (explaining that the ALJ was not required to further develop the record by seeking additional medical records where the evidence already in the record was "adequate for [the ALJ] to make a determination as to disability.").

Plaintiff also argues that the Appeals Council did not discuss 25 pages of documents submitted after the ALJ issued the unfavorable decision. *See* ECF No. 11-1 at 15-18. The regulations expressly authorize claimants to submit new and material evidence[3] to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir.

---

[3] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

2014). New evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45.

The Appeals Council letter, dated June 17, 2019, only noted evidence from "Grand Island CSD (5 pages)" and concluded that the evidence did not show a reasonable probability that it would change the outcome of the decision. Tr. 2. Although the Appeals Council did not specifically discuss all the records at issue, it was not required to do so under the regulations. The Appeals Council is not required to provide an elaborate explanation when it evaluates additional evidence presented. 20 C.F.R. §§ 404.967, 416.1467 (only requires that the Appeals Council notify the party of its action) and §§ 404.970, 416.1470 (does not mention any information that must be in the denial notice). Furthermore, the Second Circuit has specifically acknowledged that the Appeals Council's denial of review does not amount to consideration on the merits but rather, is analogous to denial of certiorari. *See Pollard v. Halter*, 377 F.3d, 183, 192 (2d Cir. 2004) (citations omitted). Thus, the Appeals Council was not required to specify why it found the additional evidence did not warrant further review of the ALJ's decision.

Even if the Appeals Council should have discussed this evidence and failed to do so, any error is harmless because the evidence did not show a reasonable probability of changing the ALJ's decision. To be material, the evidence must: (1) be relevant to the claimant's condition during the time period for which benefits are denied; (2) probative; and (c) reasonably likely to have influenced the Commissioner to decide the claimant's application differently. *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). "Plaintiff's new evidence fails to satisfy this standard because it is not material to her disability claim, in that it would not have been reasonably likely to compel a different outcome." *Seignious v. Astrue*, 905 F. Supp. 2d 459, 463 (W.D.N.Y. 2012).

The Court has reviewed the entire record, including the additional evidence, and finds that Plaintiff has failed to show that the additional evidence, when considered with the record as a whole, rendered the ALJ's decision erroneous. *See Bushey v. Colvin*, 552 F. App'x at 98. The documents submitted to the Appeals Council contain evidence that is similar to the evidence the ALJ heard in testimony and discussed from the records. Tr. 7-31, 44-54. For example, the action plan discusses anger and authority issues as well as listening and following the rules. Tr. 8-13. Plaintiff's teacher indicated that she had an obvious problem expressing anger appropriately, following rules, and respecting/obeying adults in authority. Tr. 207. The ALJ considered this evidence from I.S.'s teacher, as well as reports from Plaintiff that I.S.'s behavior was "out of control." Tr. 50. Plaintiff simply recites the language contained in the Individualized Action Plan but fails to show how this evidence conflicted with the ALJ's findings or shows that I.S. had two marked or one extreme limitation in any of the domains. Based on the foregoing, the Appeals Council did not err. *See Carbee v. Comm'r of Soc. Sec.*, No. 1:17-CV-0051 (GTS), 2018 WL 333516, at *6 (N.D.N.Y. Jan. 9, 2018) (finding no error by Appeals Council, where the new records did "not strongly suggest that Plaintiff's conditions were far more serious than at the time of the ALJ's decision.").

As discussed above, Plaintiff's mere disagreement with the ALJ's findings does not warrant remand. The Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. The ALJ reasonably determined that I.S. did not have two marked limitations or one extreme limitation in functioning. The Court accordingly finds no error in the ALJ's determination that I.S. is not disabled.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_/s/ Don D. Bush_
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE